NEW ENGLAND MORTGAGE SECURITY CO. et al. v. TARVER et al.

(Circuit Court of Appeals, Fifth Circuit. January 28, 1894.)

No. 197.

1. Consent Decree—Validity—Fraudulent Representations.
    A woman who is fully informed of all the terms and stipulations of a consent decree, and who is advised by able lawyers, and by the chancellor himself, cannot, after receiving pursuant thereto a large sum in cash, which she does not offer to return, avoid the execution of the decree by claiming that she was misled, and by setting up alleged promises and representations contemporaneous with or subsequent to the original decree.

2. Parol Evidence—Deed Absolute as Mortgage—Rescission.
    A father, by a deed absolute, conveyed lands to his son, who mortgaged the same for a large sum. Thereafter, with the consent of his father, he sold and assigned in writing the equity of redemption. Held, that under the Georgia statutes (Code §§ 1950, 3800) the father could not show

by parol a subsequent rescission of this transfer, and that the original deed from himself to his son was intended only as a mortgage, and thereby establish a right in himself to redeem the land.

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

The original bill in this case was filed by the New England Mortgage Security Company against Annie P. Tarver to foreclose a mortgage. An agreement was reached between the parties, which resulted in the entry of a consent decree containing various provisions and stipulations. Subsequently the Union Real-Estate Trust Company and J. F. F. Brewster presented a petition in the nature of an ancillary and supplemental bill, for the purpose of enforcing the decree above mentioned. To this, answers and a crossbill were filed, and the hearing below was upon the matter thus presented. The court below entered an interlocutory decree restraining the complainant and petitioners from taking out a writ of assistance, and the present appeal is taken therefrom.

The following opinion was delivered in the court below by SPEER, Circuit Judge:

The record of this cause presents a large number of questions. It was argued upon demurrer some time ago, but, on account of the intricacy of the matters presented, and the unusual and exacting demands made upon the time of the presiding judge by other very pressing and weighty causes pending in the court, it has not been practicable until now to obtain a satisfactory conclusion. On the 11th of June, 1891, the Union Real-Estate Trust Company, of Atlanta, and J. F. F. Brewster, a citizen of Massachusetts, presented to the court their petition in the nature of an ancillary bill and supplemental bill to the original litigation which had been for some time pending in this court between Annie P. Tarver as complainant and the New England Mortgage Security Company and others. From the averments of this proceeding, which for brevity will be called the "supplemental bill," it appears that on the 10th day of January, 1891, a final decree was rendered by the court in the original litigation. This litigation involved a large and remarkably fine body of lands in this district, estimated by some of the witnesses to be worth several hundred thousand dollars. They had been pledged to secure loans made by the New England Mortgage Security Company, and a decree had been obtained foreclosing the mortgages executed thereon. Mrs. Annie P. Tarver, when an attempt was made to enforce the decree, filed her bill, in the nature of a bill of review, setting out, among many grounds of apparent importance, that she had not been served, and had not had her day in court. The bill containing proper averments and prayers, a receiver of the court was appointed to take charge of the properties, to prevent waste, collect rents, etc. While the litigation was in this situation, propositions for settlement were mutually entertained by the parties. The agreement finally had was as follows:

"State of Georgia, Bibb County—ss.: This agreement, made and entered into this, the 31st day of December, A. D. 1890, between Thomas P. Stovall for the Union Real-Estate Trust Company, and J. F. F. Brewster and th New England Mortgage Security Company, parties of the first part, and Mrs. Annie P. Tarver, party of the second part, and William B. Tarver, party of the third part. Whereas, there is now pending in the circuit court of the United States for the western division of the southern district of Georgia a bill in equity filed by Mrs. Annie P. Tarver against the New England Mortgage Security Company et al., the intervention of the Union Real-Estate Trust Company in said proceedings, the cross bill of the New England Mortgage Security Company against said Annie P. Tarver, which said bill and dependent and auxiliary litigations involve the title, ownership, and possession of sixteen thousand three hundred and sixty-four acres of land, more or

less, known as the 'Tarver Place,' in Twiggs county, Georgia, and more particularly described in said bill and proceedings: Now, therefore, and in consideration of the sum of eight thousand seven hundred and fifty dollars in hand paid to the said Annie P. Tarver by the said party of the first part at or before the signing and delivery of these presents, the receipt whereof is hereby acknowledged, and for and in consideration of the sum of one dollar in hand paid to the said William B. Tarver by the said party of the first part at or before the signing, sealing, and delivering of these presents, the receipt whereof is hereby acknowledged, and for and in consideration of the mutual concessions and undertaking of the said parties hereto, as hereafter more fully set forth, made for the more speedy settlement and compromise of matters in litigation as hereinbefore mentioned, and disputes between them, the said Annie P. Tarver and the said William B. Tarver, each for themselves, have relinquished, and by these presents do relinquish, all claim, right, title, interest, and possession of, in, and to any and all of the said lands in controversy in said litigation, as well as the twenty-one hundred acres, more or less, known as the 'J. R. Wimberly Place,' except as to six hundred and fifty (650) acres of the said J. R. Wimberly place known as the 'Old Homestead,' or 'Hunter Place;' said relinquishment being in favor of J. F. F. Brewster, of Suffolk county, Massachusetts, subject to whatever agreements may exist between said Brewster and the said Union Real-Estate Trust Company in reference to said lands. And it is further agreed between all the parties hereto that this agreement shall be made a part of the decree of the said circuit court in said pending litigations, which it is agreed shall be forthwith entered by consent of all the parties upon the presentation of this agreement to the court, and according to the terms hereof, and without any further preliminary proceedings; and that the court shall decree in said final decree that the said Annie P. Tarver, and those claiming under her or through her, are forever estopped from denying the validity or effectiveness of the service of process upon her in the foreclosure suit against her filed in the United States circuit court on April 30th, 1887, by the said New England Mortgage Security Company for the foreclosure of the mortgage upon said lands given by said Annie P. Tarver to the said the New England Mortgage Security Company, and that the decree of foreclosure entered in said suit on July 7, 1887, as well as the execution issued upon the same, and the levy and sale of said lands thereunder, and the marshal's deed of September 6, 1887, conveying said lands to Charles L. Flint, the purchaser at said sale, shall be decreed to be good and valid and binding from the respective dates thereof upon the said Annie P. Tarver and the said W. B. Tarver, and all persons holding under or through them; and that it shall be further decreed that the said W. B. Tarver shall surrender up to said J. F. F. Brewster the bond for title to what are known as the 'McRae Lands,' in said county of Twiggs; and that the said Annie P. and W. B. Tarver shall transfer and assign in proper form to said Brewster the bond for title made to said J. R. Wimberly by Charles L. Flint on the 21st day of June in the year 1882, wherein and whereby said Flint obligated himself and his assigns to reconvey 2,100 acres, more or less, which are fully described in said bond to said Wimberly, upon the payment by him of a certain note of that date for the principal sum of $5,000, with interest, and which said note has been sued to judgment in the superior court of Fulton county, Georgia. And it shall be further decreed that the said J. F. F. Brewster is entitled to the immediate possession of all of said lands, except the 650 acres known as the 'Old Homestead,' or 'Hunter Place,' before mentioned, subject to the contracts and agreements heretofore entered into in relation thereto between said Brewster, Stovall, and the Union Real-Estate Trust Company; and that process may forthwith issue to put said Brewster in possession of same; and that the said Annie P. Tarver and William B. Tarver shall forthwith vacate the house and premises now occupied by them by leave of the court heretofore granted, and shall surrender all possession, title, interest, and claim of, in, or to any and all of said lands, except said 650 acres of said Wimberly place; but that said J. F. F. Brewster and said Union Real-Estate Trust Company shall execute a deed relinquishing to said Annie P. Tarver, or to whomsoever she may designate in writing, all their right, title, and claim in or to the said six hundred and

fifty acres known as the 'Old Homestead,' or 'Hunter Place,' the same to be surveyed and platted so as to include the piece of woodland next to Tarversville, and run off in one body, in such shape as Mrs. Tarver may direct. And that it shall be further decreed that all parties to said proceedings in said court shall pay the fees of their own respective solicitors, and that no costs shall be taxed therefor. That the costs in said proceedings shall be taxed as follows: The New England Mortgage Security Company shall pay the court costs of the bill filed by said Annie P. Tarver, as aforesaid, and of the answer thereto by it, and also the cross bill filed by it. The Union Real-Estate Trust Company shall pay all the costs made by the filing of its intervention, the costs of the receivership, and all compensations decreed the receiver by the court; and the said Annie P. Tarver shall be relieved of all court costs. This settlement is intended to settle all demands of the said the New England Mortgage Security Company, J. F. F. Brewster, the Union Real-Estate Trust Company, and Thomas P. Stovall, or either of them, on the one side, and of the said Annie P. Tarver and W. B. Tarver, or either of them, on the other side.

"In witness whereof the parties have hereto set their hands and seals, this December 31, 1890.

"Annie P. Tarver. [L. S.]
"William B. Tarver. [L. S.]

"Union Real-Estate Trust Company, by
"Thos. P. Stovall. [L. S.]

"The New England Mortgage Security Co., by its attorney,
"W. E. Simmons. [L. S.]

"J. F. F. Brewster, by his attorney at law,
"W. E. Simmons. [L. S.]"

It having been alleged in the pleadings heretofore filed that Mrs. Tarver had been conveying away her property under the dominating influence of her husband, the chancellor thought proper to caution her, and advise her as to the character of this agreement. This was done, and the agreement, having been signed by the counsel for all the parties, was made the decree of the court on the 10th day of January, 1891. As will be seen in the agreement, and as alleged in the supplemental bill to enforce this decree now before the court, it was provided that J. F. F. Brewster and the Union Real-Estate Trust Company should execute a deed relinquishing to Mrs. Tarver, or whomsoever she might designate in writing, all their right, title, or interest in or to 650 acres of land known as the "Old Homestead," or "Hunter Place," the same to be surveyed and platted so as to include the piece of woodland next to Tarversville, to run off in one body, in such shape as Mrs. Tarver may direct. The supplemental bill alleges that the complainants have earnestly endeavored since the decree to induce Mrs. Tarver to "run off" from said Hunter place and have platted 650 acres of land, provided for by the decree, but that she has refused to take any steps in that behalf, and has refused to make any agreement upon the subject. Complainants aver that they were anxious to make the deed as provided for by the decree, but that Mrs. Tarver refused to aid them in any respect, and was using their failure to make the deed as an excuse for remaining in possession of certain lands passed to the complainants by that decree; the supplemental bill describing it as the "Hunter Place," and setting forth the boundaries, which it stated will more fully appear by reference to the abstract of title made by John Wimberly, March 10, 1882, and furnished by him to Charles L. Flint, and the deed to the same made by said John R. Wimberly to Charles L. Flint, July 1, 1882, now to the court shown. It otherwise appeared that Charles L. Flint was the president of the New England Mortgage Security Company, and the supplemental bill stated that the complainants had acquired the title to the said Hunter place through said Charles L. Flint; that said Hunter place contained 1,313¾ acres, and "that out of the same Mrs. Tarver is entitled to have six hundred and fifty acres, to be surveyed and platted so as to include the piece of woodland next to Tarversville, to run off in one body, in such shape as she may direct." The supplemental bill then prays that, in order to carry this decree into effect, the court will appoint a competent surveyor to survey

and plat said lands and run off said 650 acres out of said Hunter place in one body, in such shape as Mrs. Annie P. Tarver may direct, and so as to include the piece of woodland next to Tarversville. On the 17th day of June, 1893, Mrs. Tarver filed her answer to this proceeding. She denied that she had delayed the steps to carry out the agreement. She averred that at the time the contract was signed she had discussed with the complainants the best mode of carrying out the agreement in good faith; that complainants had stated to her that it would be impossible to make a deed and give possession of the 650 acres of the Hunter place until said Hunter place could be sold by the sheriff of Twiggs county under a fi. fa. issued from Fulton superior court against John R. Wimberly. It otherwise appears in the record that this fi. fa. was issued on the suit of the New England Mortgage Security Company against John R. Wimberly, and under the contract between these parties, construed by the law of Georgia, the judgment constituted a lien of the highest dignity on these lands, to wit, the Hunter place, which had been conveyed to secure the loan. She states further in her answer that complainants promised that they would immediately commence to advertise the said Hunter place for the sheriff's sale in March, 1891, and that, as soon as the sale could be made, the entire tract, containing 2,172 acres, would be bought in by the complainants, and the 650 acres should be surveyed, and a deed and possession of the same should be given to her. She states that she agreed to do this, induced to do so because complainants assured her that under no circumstances would she be disturbed in her present abode until said arrangement of sale and survey could be perfected and possession given. She states further that complainants did not advertise said lands for sale by the sheriff of Twiggs county under the fi. fa. from Fulton superior court. The advertisement was in the month of February, 1891, in pursuance of her agreement with the complainants. In her answer she further avers that two weeks before the time fixed for the sale, T. P. Stovall, who, it appears, was acting for the Union Real-Estate Trust Company, in the entire transaction, came to respondent, and requested her to assign or transfer to said complainants bond for titles to the Hunter place, described in said decree. Respondent says that at first she refused to do so until the said sale should be made and the deed and possession given to said 650 acres, but that, upon assurances of said Stovall that the sale should certainly take place at the time advertised, and that complainants would buy said land, would survey the same, and that a deed would be made in good faith in a few days thereafter, defendant reluctantly yielded, and signed said bond for titles as Stovall requested; her objection being on the ground that her contract did not provide for any assignment whatever. Defendant did provide for the delivery of said bond after said survey was made and deed and possession given to said 650 acres of land. The answer further states that, after the bond for titles had been assigned, complainants immediately withdrew the land from sale. Although repeatedly and urgently requested so to do, they have failed and refused to take any steps to put themselves in a position that would enable defendant to carry out in good faith the terms of such agreement undertaken by them. She charges that she has been the victim of systematic fraud and misrepresentation on the part of complainants, not only in the framing of said decree, but in carrying out its provisions after it was adopted. She charges that she signed the agreement on the undertaking then and there of complainants to make to her good and sufficient titles to said 650 acres of the Hunter place, and put her in possession thereof; and that by artful evasions said decree was so worded that respondent was only to receive a quitclaim title from them to her of said 650 acres. She claims further by her answer that she was entitled to have 650 acres run off out of the 2,172 acres, which she insists comprises the Hunter place, and not from the 1,313¾ acres, as complainants propose, which last tract was known as the "Coombs Place," and was included in said 2,172 acres. She denies that complainants had any title to the said land, and insists that Henry R. Wimberly has now, and has had for years, possession of the land; that the deed that John R. Wimberly has filed and recorded in terms of the law was merely made to secure the loan, and did not pass the title; that by the sheriff's advertisement which the complainants

had inserted they admit possession and title in John R. Wimberly. And she insists further that the court had no jurisdiction to appoint a receiver, and direct a survey of the lands held by persons not parties to the litigation. In her answer she asks affirmative relief from the court, to wit, that the complainant should be required to do equity, and carry out in good faith the terms of the agreement. She refers to the supplemental agreement of the date of January 9th, which was omitted from the decree by the fraudulent conduct of complainants, which omission was to defraud respondent of her just and legal rights under said agreement, respondent insisting that such supplemental agreement and the entire contract that was in fact made should be executed in the utmost good faith. The substance of her prayer is that the complainants should be compelled to renew the advertisement of the sale of the Wimberly lands, known as the "Hunter Place," sell the same, acquire title, execute good and sufficient titles to respondent, and have the survey as aforesaid of said 650 acres hereinbefore described, as they undertook to do.

Pending the questions raised by this supplemental bill and her answer, it was agreed between the parties that the following questions arising on the above petition and answer shall be submitted on the proofs to be made by affidavits and documentary evidence and arguments of counsel to his honor, Judge Speer: First. From what lots and parts of lots of land the 650 acres of land referred to in the final decree of January 10, 1891, shall be carved. Second. That when the judge shall have determined the lots or land out of which the 650 acres shall be run off as Mrs. Tarver may direct, in the manner designated in such decree of January 10, 1891, the judge shall then appoint a surveyor to run off said land, and plat said 650 acres in manner and under the terms of said petition for said survey, out of the lands such judge may designate above. Third. That until said survey is complete, and plat approved by the court, the status of the parties in other respects is to remain as now, and no new steps to be taken by either party that would tend to oust the jurisdiction of the court in this proceeding. The intent of it is that the movants will not dismiss the bill after the survey, and at the same time get the advantage of the survey. Movants reserved the right to make, after said survey is complete, any legal objection to the relief prayed for in the answer of Mrs. Tarver, by demurrer or otherwise. The defendant reserved the right to make such amendment and alteration of her pleadings as may be proper and necessary. This agreement was signed by the counsel. Pursuant to this agreement, the court rendered its decision on the 16th of November, 1891. It held that it could grant no affirmative relief to the respondent upon an answer in the nature of a cross bill, but that, under the equity practice, it would be necessary to present the matters of grievance and the affirmative relief sought by a cross bill proper. As to the survey, the contention of the complainants was fully sustained as to the locality and boundaries of the Hunter place, and it was ordered that Calvin W. Hendricks, a surveyor, be appointed to run off and plat the said 650 acres, mentioned in the decree of January 10, 1891, out of the Hunter place as defined and described in the order, said survey to be in such shape as Mrs. Annie P. Tarver may direct, and so as to include the piece of woodland in the southeast corner of lot 181, next to Tarversville. The order further provided that after the survey shall have been completed, and plat filed with the court, unless exceptions shall be filed by either party to this proceeding after said plat is filed, the same shall be fully and finally confirmed. This survey was made by the surveyor, and filed in the clerk's office on December 14, 1891, and, so far as the court is informed, no exceptions have been filed to the decree itself.

On the 23d day of December, 1891, the Union Real-Estate Trust Company filed its quitclaim deed to Mrs. Annie P. Tarver to the 650 acres marked off by the survey. On the same day J. F. F. Brewster and the New England Mortgage Security Company filed with the clerk a similar deed. On January 7, 1892, it being represented to the court by the counsel for Mrs. Tarver that the marshal was proceeding with a writ of assistance to eject this lady from the home which she had occupied, that she was in delicate health, and about to be confined, and the court having been apprised by its

knowledge of the record that there was a dispute pending between her and the complainants, which she purposed to bring to the attention of the court, the following order was passed: "Upon motion of counsel for Mrs. Annie P. Tarver, it is ordered by the court that the Union Real-Estate Trust Company do not sue out a writ of assistance to enforce said final decree of January 10, 1891, without first having made formal application to the court for leave to sue out said writ of assistance, and shall serve Mrs. Annie P. Tarver with notice of such application." This order was made to apply also to J. F. F. Brewster. In the mean time, to wit, on November 16, 1891, Henry S. Wimberly was made party by intervention pro interesse suo. From this intervention it appeared that Mrs. Tarver had no title whatever to the Hunter place; that H. S. Wimberly was the father of John R. Wimberly; that H. S. Wimberly conveyed by deed this land to his son in order to enable him to borrow money from the New England Mortgage Security Company by pledging the land therefor. It is alleged in the intervention that the deed to John R. Wimberly was made for no other purpose, and, while John R. Wimberly conveyed this land to the New England Mortgage Security Company for the purpose of securing a loan of $5,000, H. S. Wimberly insists that he is, as between himself and the New England Mortgage Security Company, entitled to pay off the debt, and retake his lands. The New England Mortgage Security Company, holding a deed to the property to secure the debt under the law of Georgia, after suing its note to judgment, may file its deed with the clerk of the superior court, and levy on the land, and sell it, and, taking the sheriff's deed, may be put in possession by the sheriff; or it may, if it chooses to do so, bring an action of ejectment on the deed made to secure the debt, and acquire possession of the land by that method. This action, however, may be defeated by the payment of the debt with all proper charges. The New England Mortgage Security Company began its procedure under the option first stated. It brought suit, as we have seen, in the superior court of Fulton county, and the Union Real-Estate Trust Company, having acquired all the rights of the New England Mortgage Security Company in this debt, as we have further seen, causes fi. fa. to be levied, and the land to be advertised for sale thereunder, after the consent decree with Mrs. Tarver was taken. H. S. Wimberly attaches to his intervention a copy of the bond for titles to reconvey the land on payment of the debt, made by Charles L. Flint, president of the New England Mortgage Security Company, to John R. Wimberly. Mrs. Tarver's connection with this land is explained by the intervention as follows: Several gentlemen undertook to make a ranch on all of the Tarver lands, amounting to some 16,000 acres. This particular tract, known as the "Hunter place," from its situation, was necessary to their scheme, and H. S. Wimberly was induced to convey this land to Annie P. Tarver for them. They were relatives of hers, and all of these lands had been placed in her name. She gave to Wimberly her note for $5,000 in consideration of the Hunter place. The note was not paid. Wimberly sued in the superior court of Twiggs county. The suit was afterwards dismissed by consent. By agreement the debt was canceled, and Mrs. Tarver relinquished all right and title and interest in the Hunter place to Wimberly. As Wimberly had made no conveyance to her, she made none to him, and the color of title which she had to the Hunter place at the time of the consent decree of January 10th between herself and the New England Mortgage Security Company and Union Real-Estate Trust Company was the bare custody of the bond for titles executed by Charles L. Flint to John R. Wimberly to reconvey to the latter the Hunter place when Wimberly's debt to the New England Mortgage Security Company should be paid. H. S. Wimberly, by his intervention, calls the attention of the court to the fact that the Hunter place was in no sense comprehended in the suit between Annie P. Tarver and the New England Mortgage Security Company to enforce the debt of the latter against her lands, which was not mentioned in the pleadings. The Hunter place was not in her possession, and he declares that the consent decree of January 10, 1891, was wrong and unjust and illegal as to him for the reason that the court had no authority to take his land, or utilize it in any way as a part of the consideration of the settlement between parties in which he was in no sense concerned. He charges a

fraudulent scheme on part of the complainants to obtain a transfer by Mrs. Tarver of the bond for titles which was made by Charles L. Flint to John R. Wimberly, the object of this being to relieve complainants of the necessity of reconveying the land if the debt should be paid. This he now offers to do. He charges full notice upon all the parties as to his interests in the matter and the equities which belong to him. He states that the loan itself was usurious; that John R. Wimberly gave the note for $5,000, and in point of fact received $4,000; but he declines to avail himself of this plea. He does object to giving Mrs. Tarver 650 acres of his land, which he prays may be sold at public outcry to the highest bidder, the New England Mortgage Security Company having elected to proceed by judgment, execution, and advertisement; and proposed to pay off the debt with interest, and take the land; or he proposed to make his land bring at the sale the amount of the debt with interest and costs, and claims that he may be paid the excess of the bid, above that amount.

Another complication is presented by the intervention of W. B. Sparks. This was filed the 20th of July, 1891. It recites that John R. Wimberly owned the Hunter place. That he made to the New England Security Company a deed thereto to secure the payment of $5,000 loaned him. The deed was made, as we have seen, to Charles L. Flint, who, as we have seen, was president of the company, as grantee. Flint executed to John R. Wimberly his bond for titles to reconvey the land on the payment of the debt. After this occurrence John R. Wimberly transferred and assigned said bond for titles, together with all his title, right, and interest in said lands and under said bond, to Annie P. Tarver; and that Annie P. Tarver did afterwards on the 29th day of January, 1886, make and execute to intervener Sparks a mortgage upon certain lands. It may be observed at this point, however, that John R. Wimberly transferred and assigned this bond for titles to Mrs. Tarver on the 14th of February, 1886, and that the mortgage made to Sparks is dated the 29th day of January of that year, which was some days before Mrs. Tarver had received the bond for titles. A mortgage to Sparks was made to pay certain notes and drafts due by Mrs. Annie P. Tarver. He attacks the mortgage or deed of the New England Mortgage Security Company for usury, charging that 20 per cent. per annum was exacted, whereas the notes only specify 8 per cent. as the rate of per cent. charged, and that this was done by means of a scheme and pretended commissions to evade the laws of Georgia relative to usury. He charges further that the whole contract is void, and not collectible under the law of New York on account of the usurious charge, and that it was made in New York, and that for this reason the title never passed out of Wimberly to secure said debt. He states that the transfer of John R. Wimberly to Mrs. Tarver therefore conveyed the title which gives to intervener a first lien upon the property. He charges notice of these facts upon the Union Real-Estate Trust Company, its agents and attorneys. He charges a conspiracy between Annie P. Tarver, J. F. F. Brewster, the New England Mortgage Security Company, and the said Union Real-Estate Trust Company, by means of which Mrs. Tarver sought to divest herself of the title which she received from Wimberly by conveying the bond for titles from Flint to Union Real-Estate Trust Company. That this was done to relieve the lands of intervener's mortgage, and then to cause a conveyance of the land to some person other than Annie P. Tarver, and place it beyond the reach of intervener's right, and defeat the collection of this debt. That this agreement was made the judgment of this court on the 1st day of January, and is a part of the record in this cause. Intervener charges that Annie P. Tarver did assign and deliver up the bond for titles from Flint to Wimberly in pursuance of said agreement, and calls on all of the parties to produce the said bond for titles at the trial. He charges that the land is worth far more than a sufficient amount to pay off and discharge both the debt of John R. Wimberly and the New England Mortgage Security Company, and also to Annie P. Tarver, and that it will bring at public sale more than a sufficient amount of money to pay both debts. Mrs. Tarver has but little property, and, if said parties are allowed to pursue their purpose and intention to convey to others said land, it will reach the hands of an innocent third party, who will be protected against intervener's mortgage. He stated

that the amount was within the jurisdiction of the court, and, all the parties being in court asserting their several claims, he prays that he may be allowed to come in and assert his rights in the premises, and, waiving discovery, prays—First, for substituted service upon the solicitor of the nonresident parties; second, that all other parties, their agents and attorneys, be immediately enjoined and restrained from further proceeding to survey said lands, and from executing and delivering or receiving any conveyances of or to said lands until the final order of the court; third, that he have judgment and decree of foreclosure of his mortgage against said Annie P. Tarver for principal, interest, and attorney's fees; fourth, that his mortgage be decreed to be the first lien upon said lands, and entitled to payment out of the same in preference to the claim of any of said parties defendant; fifth, and for general relief it was agreed further that the application for a survey should proceed without prejudice to the rights of H. S. Wimberly.

### Cross Bill of Mrs. Annie P. Tarver.

On July 6, 1892, Mrs. Annie P. Tarver filed her cross bill. She states that when the terms of the consent decree had been fully discussed and agreed upon, the decree was drafted by the attorneys for the New England Mortgage Security Company and the Union Real-Estate Trust Company, and that neither she nor her attorneys read said decree. She states that she, her husband, W. B. Tarver, and Minter Wimberly, one of her counsel, were present when the decree was read to them by William E. Simmons, attorney for the New England Mortgage Security Company, and that the word "quitclaim," or other word of similar import, was never used in reading said decree, but that "good" title or "warranty deed" was substituted therefor, by which she was induced to accept the terms of the agreement, because that, in discussing the terms of said agreement in the presence of her husband and W. A. Davis, also D. C. Hughs,—friends of the oratrix, selected by her to aid her in fixing the terms of said agreement,—and that in the presence of the counsel for the Union Real-Estate Trust Company, and also in the presence of Thomas P. Stovall, it had been invariably understood and expressly agreed that she should receive good and sufficient titles to said 650 acres of land. She states further that both Thomas P. Stovall and William E. Simmons assured her that the title would be put beyond all question by the sale of the Wimberly land; that when said sale should take place, and the title of Wimberly and the mortgage of W. B. Sparks finally divested, they could and would make to your oratrix a good and sufficient title to the same; that both herself and the other parties to the decree were fully advised of the complications surrounding the making of titles to said land; and that, if she had in good faith agreed to accept the conditions of said decree as it now stands worded, she would have done so with the full knowledge that the portion of said decree by which she was to receive a quitclaim deed to said 650 acres of the Hunter place was utterly worthless, and carried no valid consideration, and conferred upon her no greater privilege than that of paying off the Sparks mortgage, of which your oratrix had never received one dollar of benefit, and which had been made for the benefit of other persons entirely, and which she could never have been legally compelled to pay out of her own personal means. She states further that she was lulled into a feeling of security by the positive assurance that the sale of the said Wimberly land should take place as had been agreed upon, and, knowing that if said sale should be made, and said land bought in at said sale by said New England Mortgage Security Company and said Union Real-Estate Trust Company, as they had solemnly promised to do, their deed would give her a good title to the land she had selected and earnestly desired in order to shelter and rear her helpless brood of little children. She states that she was advised by disinterested friends that in accepting said decree, even as she supposed it to be, she was making a great sacrifice of her material interest. That she was moved to make this sacrifice in order to get a home, where she might rear and educate her children, unvexed by litigations and unembarrassed by the anxieties of continual lawsuits. She states that she was misled and entrapped into agreeing to the terms of said agreement by having them read in a different manner from that in which they were set down, and in finally accepting said decree under the belief that the subse-

quent stipulations as to sale and possession of the said 650 acres had been inserted therein as agreed upon.    She states that, relying upon the good faith of said William E. Simmons and Thomas P. Stovall, she would have immediately given up possession of her home, and placed herself absolutely in their power, if the latter had not then and there tendered to her notes for $2,500, payable in New York, at 8 per cent. interest, instead of cash, as it was understood said payment was to be in cash.    That she had already signed said agreement, and then and there refused to accept said notes, which were void under the laws of New York, but, being incensed at what she believed a deliberate effort to swindle her, at once repudiated said entire agreement, and immediately left for her home; and subsequently, when urged by Thomas P. Stovall to reconsider her action, she consented to accept proper notes on New York, instead of cash, for said $2,500, upon the solemn assurance that she was not to be molested in her home until said notes should be paid, and said Wimberly land should be sold, and oratrix put in possession of said 650 acres as above described.    That she refused to reconsider her action until the said agreement should contain a stipulation, in addition to the former terms, that said sale of said Wimberly land should take place immediately, and that she should remain in undisturbed possession of the homestead until said sale and conveyance of title of said 650 acres of land should be made to her, which Thomas P. Stovall then and there agreed to be done.    She states that she was assured by her husband, W. B. Tarver, that said agreement contained said additional stipulation, and that she acted under that belief when she informed the chancellor in a private interview that she was satisfied with said agreement.    She states that she received no consideration for the sacrifice she made in accepting said decree, except the $8,750, paid as aforesaid; and that, if said decree should be enforced according to its literal tenor, the portion of said consideration purporting to give her a home, which she regarded as the most valuable and indispensable part thereof, would be rendered utterly valueless and worthless to her, and, she repeats, would give her no greater advantage or privilege than to pay off and settle the mortgage of W. B. Sparks, which is a debt incurred for the benefit of other persons, and in which she did not participate.    That she has been systematically misled, not only in getting her consent to accept said decree, but in the reading of the same so as to give the terms thereof an entirely different significance from those actually set down; and that said agreement to give her a title to a home on the 650 acres was so worded and so read for the express purpose of making the word of promise to the ear, only to break it to the hope.

To the various answers and cross bills and interventions which have been hereinbefore set out, the New England Mortgage Security Company and the Union Real-Estate Trust Company have interposed demurrers.    They were set down for argument.    After argument the questions presented were taken under consideration by the court.    The questions themselves have been found difficult and perplexing.    For the purpose of demurrer, of course, the averments in the answers and in the interventions and in the cross bill of Mrs. Tarver, where properly pleaded, must be taken as true.    At the same time, the court must consider them in connection with the record wherein it makes plain the intention of the parties and the action of the court.    After careful and anxious inquiry, we find, in the present state of the record, that the equity of the case may be stated as follows: Mrs. Tarver claimed the title to about 16,000 acres of land, which was exceedingly valuable.    She was resisting an interference with her possession of these lands by means of an execution obtained by the New England Mortgage Security Company against her.    Without considering the merits of her contention, it may be presumed from the facts that the Union Real-Estate Trust Company, who succeeded to the rights of the New England Mortgage Security Company, agreed to pay her the sum of $8,500, and also to relinquish to her all the claim and right it had and which the New England Mortgage Security Company had to the Hunter place, above described, in consideration of the abandonment by her of the contest she was making; that the resistance was formidable, and perhaps threatening to the validity of the execution itself.    In the agreement it appears that she did abandon this contest, and, further, that she surren-

dered her right to a very large, very fertile, and very valuable body of lands, which is otherwise shown in the record to be worth anywhere from $75,000 to $200,000. Now, to secure both parties the valuable results of the agreement into which they entered, it is undoubtedly true that the valuable result which the Union Real-Estate Trust Company sought to attain is this immense body of fertile and valuable land. It is perhaps not improper to state that it otherwise appears in the record that the company was organized perhaps mainly for the purpose of profitable speculation in these lands. That Mrs. Tarver's title was seriously embarrassed is unquestionably true. That the mortgage of the New England Mortgage Security Company would eventually have prevailed as against her lands is probably true. It is, however, probably true that there would have been delay caused by the fact that she was not served by process as the law requires. The valuable result which she sought to obtain was pecuniary compensation paid her and the 650 acres of land, which all through the controversy appears was desired by her as a home for herself and her children. This appears in her answer and in her cross bill. It was stated in judicio by her counsel when the consent decree was proposed; it was discussed by the chancellor and this lady when he felt obliged to advise her as to the far-reaching effect of the decree which conveyed away from her the title to so much and such valuable property. It follows, therefore, that if, without violating the principles of equity, the court can secure to her her home, it is our duty to do so.

Now, it is true it is insisted that upon the face of the agreement, which is made the decree of the court, there is nothing but the relinquishment of the title which the Union Real-Estate Trust Company and J. F. F. Brewster, who acted for the New England Mortgage Security Company, had in the 650 acres of the place called the "Hunter Place," and otherwise the "Wimberly Place." It might be true, if this were a court of law, it would be obliged to give a narrow construction to the terms of the instrument itself, without a consideration of the equities surrounding it, that this contention might be sustained; but we are in a court of equity, which will look through forms in order to find the substance of the agreement. Now, what is the language of this agreement upon which Mrs. Tarver is ready to rely in order to obtain a home for herself? It is agreed that Annie P. Tarver and William B. Tarver shall forthwith vacate the house and premises now occupied by them by leave of the court heretofore granted, and shall surrender all possession, title, interest, and claim of, in, or to any or all of said lands except said 650 acres of said Wimberly place, but that the said J. F. F. Brewster and said Union Real-Estate Trust Company shall execute a deed relinquishing to said Annie P. Tarver, or to whomsoever she may designate in writing, all their right, title, and claim in or to the said 650 acres known as the "Old Homestead," or "Hunter Place," the same to be surveyed and platted so as to include the piece of woodland next to Tarversville, and run off in one body, in such shape as Mrs. Tarver may direct. Is it not, then, true, when these parties agreed to relinquish to Mrs. Tarver all their right, title, claim, and interest to said 650 acres, they agreed to give her all the elements and means of making an effective title in her to that land which they possessed? We think so, clearly. And if, by directing them to do that for her, which they otherwise in the assertion of her title would and could have done, the court can make her title perfect, it is our duty to direct.

Now, what is the right and title of the Union Real-Estate Trust Company and J. F. F. Brewster or the New England Mortgage Security Company in the Hunter place? In other words, what is their equity? Whatever it is, Mrs. Tarver takes it under this agreement. If it should be a perfect title the word "relinquish" would be equivalent to the word "convey," and it would not matter, to the perfection of her title, that there was an absence of the covenant of warranty in the conveyance. The New England Mortgage Security Company held at the time of the agreement, and now holds, an equity which could be easily ripened by their action into a formal and perfect title to the Hunter place. It follows, therefore, that this power is also applicable to any portion of the Hunter place, and to the 650 acres surveyed and set off to Mrs. Tarver. H. S. Wimberly had conveyed the entire tract to the New England Mortgage Security Company to secure a debt for

$5,000. It is true that the New England Mortgage Security Company, in compliance with the statute of the state of Georgia, had given to John R. Wimberly a bond obliging them to reconvey the title to him on the payment of the debt. And it is also true that this bond for titles was delivered to Mrs. Tarver, and that subsequently she redelivered this bond for titles to Thomas P. Stovall, in the interests of the complainants. It is also true that the New England Mortgage Security Company did not elect to proceed against this land upon their title to it, but they treated their agreement with John R. Wimberly merely as a security for the debt. They sued their note in Fulton superior court, obtained judgment, and issued execution, which, according to the averments of Mrs. Tarver's bill, they levied upon the land, and advertised it for sale for the purpose of perfecting title in her. Whether this last statement be true or not, if it also be true that H. S. Wimberly chooses to do so, he can pay off the accounts due on this execution, with all proper charges; and the New England Mortgage Security Company, and those who hold under it, will have no right to complain. But, if this be not true, the New England Mortgage Security Company and the Union Real-Estate Trust Company having relinquished all their right in this land to Mrs. Tarver for a valuable consideration, she has the right to compel them to do for her which they might have done for themselves to protect her title to the 650 acres of that tract intended for her. She therefore has plainly the right to insist that they should levy on the 650 acres of land, sell it at marshal's sale, and bid at the sale to the full extent of their judgment against John R. Wimberly, and thus buy in the land, and make their right, which they have conveyed to her, a perfect title. If, however, the entire tract should bring a larger sum than the amount due on their judgment, and if it should be bought in at the sale by other parties, Mrs. Tarver would be entitled to be paid from the proceeds a sum to be ascertained as an equitable apportionment of the value of her 650 acres as compared with the entire tract. This seems to be upon principles of equity incontestably true. The court cannot shut its eyes to the fact that it is at this moment easily within the control of the complainants in the supplemental bill to make title to themselves by a judicial sale certainly in the 650 acres, and we repeat that whatever they might do for themselves, it being their legal right, has been relinquished by them to Mrs. Tarver, and the court can compel them to do for her. It is also true, in view of the averments of his intervention, that H. S. Wimberly is entitled to have the Hunter place sold, and to bid, if he chooses, at the sale, or, if he does not bid, to claim any excess of the price for which these lands sold over and above the amount necessary to discharge the debt due to the New England Mortgage Security Company and controlled by J. F. F. Brewster and the Union Real-Estate Trust Company. For these reasons the demurrers to the intervention of H. S. Wimberly to the answers and cross bill of Mrs. Tarver will be overruled and denied.

With regard to the intervention of W. B. Sparks, the court is of the opinion that it has no jurisdiction to consider the relief which that intervener seeks. He insists that he has a mortgage, executed by Mrs. Tarver, on these lands. If he has, he may proceed in the state courts to assert the lien of his mortgage, and his equities, if they exist, need not be considered by this court. Mrs. Tarver insists that her individual property is not responsible for this debt. Whether it is or not, or whether the mortgage of W. B. Sparks will prevail against a title perfected by sale under the special lien of the mortgage to the New England Mortgage Security Company, controlled by the Union Real-Estate Trust Company, it is not necessary for this court to consider. For the reasons stated, let an order be taken striking the intervention of W. B. Sparks, and overruling the demurrers presented by the complainants.

W. E. Simmons (Marion Erwin, of counsel), for appellants.

W. D. Nottingham and Minter Wimberly, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. An earlier decision of this case has been prevented by sickness among the judges, and an elaborate opinion is prevented by the approaching recess of the court. The facts of the case are fully stated in the opinion of the trial judge on page 175 to the middle of page 187 of the transcript, except that the following, which appears to have been accidentally omitted in the statement of the case, should be appended to the agreement, to wit:

"The above agreement having been entered into at night, and after banking hours, and to-morrow being a legal holiday, on which all banks will be closed, we agree that the same shall be filed with L. M. Erwin, deputy clerk of the circuit court of the United States for the southern district of Georgia, and that no decree shall be rendered as therein agreed until the $8,750 shall be paid, and that immediately after such payment this agreement shall be delivered to W. E. Simmons, and a decree taken.

"This December 31st, 1890.

"[Signed]                                    W. E. Simmons,
"Attorney at Law for the New England Mortgage Security Company and J. F. F. Brewster.

"Bacon & Rutledge,
"Minter Wimberly,
                     "Attorneys for A. P. Tarver."

Assuming that on a petition for a survey ordered in the decree, and for a writ of assistance to execute the final decree rendered at a former term of the court, Mrs. Tarver can attack by answer and cross bill the decree for error, fraud, or misrepresentation, and that the averments in the answer and in the cross bill were properly pleaded, and must be taken as true, we agree with the learned judge of the circuit court that at the same time the court must consider them in connection with the record wherein it makes plain the intention of the parties. It cannot be disputed that in entering into the agreement which is the basis of the final decree in the case Mrs. Tarver was fully advised of all the terms and stipulations thereof, and acted with full knowledge, and with the advice and counsel of able and eminent lawyers, and that in regard to the matter she was advised by the chancellor. It is not to be conceived that under such circumstances she was deceived or misled with regard to the terms and stipulations of the agreement she entered into. In fact, a careful reading of her cross bill shows that she does not at this time make any distinct and specific averment sufficient to show that she was misled. By the agreement she received the sum of $8,750 in cash. In resisting the execution of the decree, and in seeking to prevent her forced compliance therewith, she makes no offer or suggestion to return the said sum; much less does she pay or tender it in court.

The answer and cross bill in the case show that the facts she deals with are in relation to agreements, promises, and representations contemporaneous with the agreement itself, and not incorporated therein, or in relation to assurances given by Thomas P. Stovall subsequent to the agreement that the sale of the Wimberly lands, as then advertised, should take place. In short, we find that the facts properly pleaded in the answer and cross bill fall far short of presenting a case sufficient to warrant a court of equity in setting

aside or modifying the final decree based upon the agreements of the parties, or from enjoining the execution of the decree until the appellants shall do and perform some matter or thing not specifically provided for in said decree. The final decree which was entered in pursuance of the agreement with Mrs. Tarver, with full knowledge and under the advice of counsel, and under which she holds at this time, without offer to return, the sum of $8,750, provides:

"And it shall be further decreed that the said J. F. F. Brewster is entitled to the immediate possession of all of said lands, except the six hundred and fifty acres known as the 'Old Homestead,' or 'Hunter Place,' before mentioned, subject to the contract and agreements heretofore entered into in relation thereto between said Brewster, Stovall, and the Union Real-Estate Trust Company; and that process may forthwith issue to put said Brewster in possession of same; and that the said Annie P. Tarver and William B. Tarver shall forthwith vacate the house and premises now occupied by them by leave of the court heretofore granted, and shall surrender all possession, title, interest, and claim of, in, or to any and all of said lands except said six hundred and fifty acres of said Wimberly place; but that said J. F. F. Brewster and said Union Real-Estate Trust Company shall execute a deed relinquishing to said Annie P. Tarver, or to whomsoever she may designate in writing, all their right, title, and claim in or to the said six hundred and fifty acres known as the 'Old Homestead,' or 'Hunter Place,' the same to be surveyed and platted so as to include the piece of woodland next to Tarversville, and run off in one body, in such shape as Mrs. Tarver may direct. And that it shall be further decreed that all the parties to said proceedings in said court shall pay the fees of their own respective solicitors, and that no costs shall be taxed therefor."

In our opinion, Mrs. Tarver shows no legal or equitable ground against the execution of this decree, and ought not to be permitted to have an injunction restraining the execution of the decree until the appellants shall do or perform some matter not specified in the decree, and, so far as the record goes, of very doubtful agreement elsewhere.

The only proceeding pending in the court at the time of the filing of the intervention of H. S. Wimberly was the petition of the appellants for a survey of the 650 acres, as provided in the final decree, so that the appellants could make the deed in conformity with the terms of the decree. Neither the title nor possession of the land in which said Wimberly claims an equity could have been affected in any degree by the determination of the issue thus raised, nor could any decree rendered be binding on him. It is very doubtful whether he had any right to intervene in the case. The deed of March 14, 1882, from H. S. Wimberly to John R. Wimberly, was a warranty deed, absolute on its face, and the intervener relies solely upon an alleged oral understanding to reconvey, and upon his alleged continued possession. Section 1950 of the Code of Georgia is as follows:

"To make the following obligations binding on the promisor, the promise must be in writing, signed by the party to be charged therewith, or by some person by him lawfully authorized. 1st: A promise by an executor, administrator, guardian or trustee to answer damages out of his own estate. 2d: A promise to answer for the debt, default or miscarriage of another. 3d: Any agreement made upon consideration of marriage except marriage articles as hereinbefore provided. 4th: Any contract for sale of lands, or any

interest in or concerning them. 5th: Any agreement that is not to be performed within one year from the making thereof."

Section 3800 of the Code of Georgia provides:

"That parol contemporaneous evidence is inadmissible generally to contradict or vary the terms of a valid written instrument."

It is contended, however, that under the circumstances of the case parol evidence is competent to change the character of the deed of 1882 from H. S. Wimberly to John R. Wimberly into a mortgage or deed of trust, under which H. S. Wimberly really held, as of right, the equity of redemption. If it is admitted that this was true at the time of the deed, still the subsequent transfer and assignment of 1886, in writing, by J. R. Wimberly to Mrs. Tarver, with the admitted consent, if not procurement, of Henry S. Wimberly, of the equity of redemption, and the acceptance by Henry S. Wimberly of Mrs. Tarver's note in payment therefor, would seem to have divested all right and title of H. S. Wimberly. If this be so, it is clear that the alleged rescission afterwards of this transfer of the equity of redemption cannot be set up by parol. It was an independent transaction in regard to the land, and the proposition to establish such rescission and the continued equity in H. S. Wimberly by parol is far from being a proposition to show by parol that an equitable interest was reserved to H. S. Wimberly at the time he parted with the legal title, or that the absolute deed then executed was intended to operate as a mortgage. If we go further, and admit, for the purposes of the case, that there is some equity of redemption still left in Henry S. Wimberly, still, as the validity of the debt of $5,000 secured by the deed of J. R. Wimberly to Charles L. Flint, and now amounting to about $9,000, and wholly unpaid, is admitted, then, under sections 1969 and 1970 of the Code of Georgia, which provide that a deed with a bond to reconvey passes the title to the vendee until his debt is paid, it is clear that without payment of the debt the said H. S. Wimberly can assert no title to the land in controversy cognizable either in a court of law or a court of equity.

The decree of July 25, 1893, appealed from, restraining J. F. F. Brewster, the New England Mortgage Security Company, and the Union Real-Estate Trust Company from taking out and having executed a writ of assistance on the decree of January 10, 1891, should be reversed, with costs, and the cause remanded to the circuit court for such further proceedings not inconsistent with the views herein expressed; and it is so ordered.